## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

SPRINT COMMUNICATIONS COMPANY
L.P.,

      Plaintiff,

v.

COMCAST IP HOLDINGS, LLC
and COMCAST IP PHONE, LLC,

      Defendants.

**Case No. 12-1013-RGA**

**DEMAND FOR JURY TRIAL**

 

**REDACTED PUBLIC VERSION**

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO U.S. PATENT NO. 5,793,853

Of Counsel:

Matthew B. Lehr (#2370)
Anthony Fenwick (*pro hac vice*)
David J. Lisson (*pro hac vice*)
Anna M. Ison (*pro hac vice*)
Gareth E. DeWalt (*pro hac vice*)
Micah G. Block (*pro hac vice*)
Shiwoong Kim (*pro hac vice*)
Alyse L. Katz (*pro hac vice*)
Alex H. Hu (*pro hac vice*)
Brooke A. Pyo (*pro hac vice*)
DAVIS POLK & WARD WELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Tel: (650) 752-2000

Pejman F. Sharifi (*pro hac vice*)
Krishnan Padmanabhan (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700

Arthur G. Connolly III (#2667)
Ryan P. Newell (#4744)
CONNOLLY GALLAGHER LLP
1000 West St., Suite 1400
Wilmington, DE 19801
Tel: (302) 757-7300
Fax:(302)757-7299
aconnolly@connollygallagher.com
rnewell@connollygallagher.com

*Attorneys for Comcast Cable
Communications, LLC and Comcast IP
Phone, LLC*

Michael L. Brody (*pro hac vice*)
Brian J. Nisbet (*pro hac vice*)
James Winn (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600

Jude Andre (*pro hac vice*) WINSTON &
STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
Tel: (713) 651-2600

Dated: October 6, 2014
Redacted Public Version Filed: October 14, 2014

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF ARGUMENT | 1 |
| | A. | Noninfringement | 1 |
| | B. | The '853 Invention Date is the Patent Filing Date – June 22, 1995 | 1 |
| | C. | Sprint Cannot Recover Damages For Any Alleged Infringement | 2 |
| III. | The Law Governing Summary Judgment | 3 |
| IV. | NONINFRINGEMENT | 3 |
| | A. | Statement of Facts With Respect to Noninfringement | 3 |
| | | 1. | The '853 Patent | 3 |
| | | 2. | The Accused Comcast Networks | 4 |
| | B. | Non-Infringement Argument. | 5 |
| V. | Sprint Cannot Establish a Date of Invention for the '853 Patent Earlier Than the June 22, 1995 Actual Filing Date. | 10 |
| | A. | The Applicable Law | 10 |
| | B. | Statement of Facts With Respect to Invention Date. | 11 |
| | C. | Argument: The Invention Date is the Filing Date of the Patent. | 11 |
| VI. | Sprint Cannot Prove Any Damages For The Alleged Infringement of the '853 Patent | 15 |
| | A. | The Applicable Law | 15 |
| | B. | Statement of Facts with Respect to Damages. | 15 |
| | C. | Argument Regarding Damages | 16 |
| VII. | CONCLUSION | 19 |

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Apotex Inc.*,
   854 F.3d 952 (Fed. Cir. 2014)......................................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................................... 3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................................... 3

*Cordance Corp. v. Amazon.com, Inc.*,
   658 F.3d 1330 (Fed. Cir. 2011).................................................................................. 11, 15

*Creative Compounds, LLC v. Starmark Laboratories*,
   651 F.3d 1303 (Fed. Cir. 2011)....................................................................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)......................................................................................................... 15

*Davis v. Brouse McDowell*,
   596 F.3d 1355 (Fed Cir. 2010).................................................................................. 13, 17

*Deering Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
   347 F.3d 1314 (Fed. Cir. 2003)......................................................................................... 3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)......................................................................................................... 10

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)......................................................................................................... 16

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed.Cir.1996) ............................................. 10, 13, 14

*Nike Inc. v. Wolverine World Wide, Inc.*,
   43 F.3d 644 (Fed. Cir. 1994)............................................................................................. 3

*Ortho-McNeil Pharm., Inc. v. Teva Pharms. Indus., Ltd.*,
   344 Fed. Appx. 595 (Fed. Cir. 2009).............................................................................. 10

*Price v. Symsek*, 988 F.2d 1187 (Fed. Cir.1993) ....................................................................... 10

*Sewall v. Walters*,
   21 F.3d 411 (Fed. Cir. 1994)..................................................................................... 10, 12

*Singh v. Brake*,
   317 F.3d 1334 (Fed. Cir. 2003).................................................................................. 11, 12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013).................................................................................. 11, 15

*Teva Pharm. Indus., Ltd v. Astrazeneca Pharms. LP*,
    661 F.3d 1378 (Fed. Cir. 2011)......................................................................................... 11

*Virnetx, Inc. v. Cisco Sys., Inc.*, --- F.3d ---,
    2014 WL 4548722 (Fed. Cir. Sept. 16, 2014) .................................................................. 16

*Xpertuniverse, Inc. v. Cisco Sys., Inc.*,
    No. 09-CV-00157 (D. Del. March 11, 2013)..................................................................... 13

**Rules**

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) ............................................................................. 2

## I.    INTRODUCTION

Defendants Comcast Cable Communications, LLC and Comcast IP Phone, LLC ("Comcast"), file this motion seeking summary judgment that (1) the accused Comcast IMS network does not infringe United States Patent No. 5,793,853 ("the '853 patent") asserted by Plaintiff, Sprint Communications Company, L.P. ("Sprint"), with respect to calls initiated on the IMS network; (2) the priority date for the '853 patent is not earlier than May 10, 1995; and (3) the damages opinions of Sprint's technical and financial experts must be stricken and Sprint must be determined to take $0.00 in damages.

## II.    SUMMARY OF ARGUMENT[1]

### A.    Non-Infringement

1.    Comcast's accused IMS network does not literally infringe any asserted claims of the '853 Patents for calls originating on it. Asserted method claims 10, 11, 20, 22, and 23 of the '853 patent require the steps of "generating a *primary record* . . . containing information relating to the services *provided by a primary network element* in response to the corresponding service request," and "transmitting the primary record *from the primary network element* to a separate network element." Similarly, asserted system claims 24, 29 and 32 require a "*primary network element* adapted to *generate a primary record* in response to a service request" and "a . . . network element separate from the primary network element . . . adapted to receive records from the primary network element . . ." In other words, for each claim, there must be a "primary record" for the "primary network element."

REDACTED

### B.    The '853 Invention Date is the Patent Filing Date – June 22, 1995

---

[1]    In focusing on the following issues, of course, Comcast does not mean to waive any other defenses, all of which are reserved for trial. Nor do we mean to imply that these are the only reasons why Sprint's claim must fail as a matter of law. We limit ourselves to this handful of issues solely for the convenience of the Court.

3.      Sprint and its designated technical expert, Dr. Arthur Brody, assert an invention date of October 4, 1994 or at the latest March 21, 1995. Ex. B, Brody Inv. Rep. at ¶ 65. As a matter of law, however, Sprint cannot show a conception date earlier than the actual patent filing date of June 22, 1995.

4.      Sprint and Dr. Brody have failed to provide any element-by-element analysis or opinion comparing the alleged conception evidence to the asserted claims to support their alleged conception dates. Rather, the documents referenced by Dr. Brody show that even the month before the filing of the patent application, key claim elements had not yet been conceived. Moreover, as to earlier documents dated in October 1994 and relied on by Dr. Brody: (a) no link to the named inventor of the '853 patent appears, (b) they are so highly redacted and excerpted as to be incomprehensible, and (c) they omit critical elements of the asserted claims.

5.      Moreover, there is no evidence of any diligence between the date of the purported conception documents and the time at which work began on the application that led to the '853 patent. Therefore, as a matter of law, the conception cannot be any earlier than the filing date of the application that lead to the '853 patent – June 22, 1995.

## C.      Sprint Cannot Recover Damages For Any Alleged Infringement

6.      Sprint's designated damages expert, Debra Aron, assigned a purportedly reasonable royalty to the accused infringement by allocating a portion of the annual savings attributable to Comcast's IMS network to the functionality in that network allegedly attributable to the inventions covered by the asserted claims.

7.      In so allocating, Ms. Aron relied upon the opinion of Sprint's designated technical expert, Dr. Brody. However, Dr. Brody's opinions on the contribution of the claimed invention are not reliable and cannot be admitted because they (a) fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(ii), (b) employ a methodology that is on its face not reliable, and (c) fail to apportion the value of the Comcast billing function attributable to the contribution of the claimed invention. Under these circumstances, Ms. Aron's opinion is not reliable and cannot be admitted. Therefore, Sprint cannot recover any damages.

## III.    THE LAW GOVERNING SUMMARY JUDGMENT

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party us entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" only if it might reasonably affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the evidence must be viewed in the light most favorable to the nonmoving party, in order to defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable jury to find for the nonmoving party. *Id.* at 252. For patent infringement, plaintiff Sprint carries the burden of proving that an accused device meets each limitation of an asserted claim, either literally or under the doctrine of equivalents. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003).

## IV.    NON-INFRINGEMENT

### A.    Statement of Facts With Respect to Non-Infringement

#### 1.    The '853 Patent

The '853 patent "relates in general to recording the services provided by a telecommunication network in response to a service request" made in connection with a phone call. Ex. A, '853 patent at 1:7-12. The patent contends that in prior art telecommunications networks, the network element that initially receives the call would collect and record all service information for the call from all network elements providing services for the call. *Id.* at 1:39-48. The patent further asserts that the prior art approach resulted in undue dependence on the vendors who manufactured network equipment and that it also resulted in congestion from a high volume of queries and responses. *Id.* at 1:53-2:14.

To solve these alleged problems, the '853 Patent discloses a system in which a respective record is generated for services of each network element. For example, in independent claim 24, the first network element to receive a service request—referred to in the claims as the "primary network element"—generates a "primary record" for the services that it provides. *Id.* at 8:53-55.

3

Another "network element"—referred to as a "secondary network element"—generates a "secondary record" for the services that it provides. *Id*. at 8:57-59. The primary and secondary service records of the primary and secondary network elements are transmitted to still another network element (referred to as a "merge processor" in some claims) for merging the records into a unitary billing record. *Id*. at 3:17-32; 7:63-65; 8:4-5.

It is self-evident—indeed, it is the whole point of the patent—that the claims require generation of a primary record for the primary network element for the services it provides. As explained below, the accused Comcast network does not do that.

> **2.    The Accused Comcast Networks**
> **REDACTED**

REDACTED

**B.** **Non-Infringement Argument**

REDACTED

REDACTED

**REDACTED**

REDACTED

**REDACTED**

**REDACTED**

## V.    SPRINT CANNOT ESTABLISH A DATE OF INVENTION FOR THE '853 PATENT EARLIER THAN THE JUNE 22, 1995 ACTUAL FILING DATE

Sprint and its expert, Dr. Brody, contend that the asserted claims of the '853 Patent were invented as early as October 4, 1994 and no later than March 21, 1995. Ex. B, Brody Inv. Rep. at ¶ 65. As a matter of law, the undisputed evidence is to the contrary.

### A.    The Applicable Law

"[P]riority of invention 'goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.'" *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577 (Fed. Cir. 1996) (quoting *Price v. Symsek,* 988 F.2d 1187, 1190 (Fed. Cir. 1993). "To have conceived of an invention, an inventor must have formed in his or her mind a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Id.* This occurs when "every feature of the subject matter sought to be patented, is known." *Sewall v. Walters,* 21 F.3d 411, 415 (Fed. Cir. 1994).    Thus, in order to prove a conception date of an invention prior to the patent filing date, the asserted "conception must encompass all limitations of the claimed invention." *Singh v. Brake,* 317 F.3d 1334, 1340 (Fed. Cir. 2003); *Cordance Corp. v. Amazon.com, Inc.,* 658 F.3d 1330, 1334 (Fed. Cir. 2011); *Taurus IP, LLC v. DaimlerChrysler Corp.,* 726 F.3d 1306, 1323-24 (Fed. Cir. 2013).

An inventor exercises "reasonable diligence" in reducing a conceived invention to practice, only to the extent that the evidence of diligence "account[s] for the entire period during which diligence is required." *Creative Compounds, LLC v. Starmark Labs.,* 651 F.3d 1303, 1312-1313 (Fed. Cir. 2011). The mere assertion of diligence is insufficient. *Id.* Plaintiff Sprint maintains the burden of production to demonstrate that the claimed invention was made before the patent's filing date. *Allergan, Inc. v. Apotex Inc.,* 754 F.3d 952, 967 (Fed. Cir. 2014). "Priority, conception, and

reduction to practice are questions of law based on subsidiary factual findings." *Teva Pharm. Indus., Ltd v. Astrazeneca Pharms. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011).

## B. Statement of Facts With Respect to Invention Date

In selecting October 4, 1994 and March 21, 1995 as alleged invention dates, Sprint and Dr. Brody rely on documents labeled SPRIDEO_03_00003825 and SPRIDEO_03_00003826 which are two pages (pages 10 and 18) from an unidentified document dated October 4, 1994. (The "October Disclosure.")    Ex. B, Brody Inv. Rep. at ¶¶ 66-68 and Ex. K, at SPRIDEO_03_00003825-26.    The October Disclosure was located in the file of Sprint's prosecution counsel and relied on in preparing the '853 application. Ex. L, Setter Dep. 54:11-55:17; 57:14-58:7.  Dr. Brody states that "it is my opinion that these pages show that the conception of the invention of the '853 was complete as of October 4, 1994." Ex. B, Brody Inv. Rep. at ¶ 69. He further relies on time records beginning on March 21, 1995 and reflecting the work done to prepare the application that led to the '853 patent to establish his "no later than March 21, 1995" date. *Id.* at ¶ 65.

## C. Argument: The Invention Date is the Filing Date of the Patent

As a preliminary matter, it is important to note two things:

First, whatever, if anything, was conceived at the time of the October Disclosure, there is no evidence at all showing what was done to reduce that conception to practice between the date the document bears and the beginning of the patent application process nearly six months later. Dr. Brody does not cite any such evidence in his report, which, as he has acknowledged, (Ex. F, Brody Dep. at 116:20-117:2), means he did not rely on any such evidence. Because, regardless of the date of conception, an inventor cannot claim a date of invention until the earlier of such time as diligence commences or the invention is reduced to practice, *Mahurkar*, 79 F.3d at 1577, the absence of any even arguable evidence of diligence between October 4, 1994 and March 24, 1995 means that regardless of when conception occurred, the earliest possible date of invention would be the commencement of the patent application process on March 24, 1995.

Second, in order for the March 1995 date to represent the date of invention, the October

11

Disclosure in 1994 must have been a full and complete conception document. That is, Sprint's position appears to be that, to the extent the October Disclosure shows a conception of the invention, it confirms that the commencement of work on the patent application represents the commencement of diligence in (constructively) reducing that conception to practice. But that argument only works to the extent that the October Disclosure actually represents a *full* conception of the claimed invention including "every feature of the subject matter sought to be patented," *Sewall*, 21 F.3d at 415, and "all limitations of the claim[s]." *Singh*, 317 F.3d at 1340. Thus, to the extent that any elements of the asserted claims are *not shown* in the October Disclosure, there is no basis for dating conception of the invention to that time period.[7]

In short, on the uncontested record, the earliest possible invention date would be March 21, 1995, but even that invention date is supported only if the October Disclosure represents a complete conception of the asserted claims. It does not.

For one thing, the October Disclosure is a two page excerpt from a much longer document which is so heavily redacted as to be largely incomprehensible. Ex. C, Bradner Dec. at Ex. A, ¶¶ 184-198. To the extent that the document can be understood, it does not show the status of the alleged "conception." *Id.* at ¶199-201. Thus, the evidence available does not on its face permit a person of ordinary skill to understand what the inventor had conceived of by October 1994, and there is no evidence that, whatever the inventor had in mind, he possessed a "definite and permanent idea of the complete and operative invention, as it [was t]hereafter to be applied in practice," *Mahurkar*, 79 F.3d at 1577, as of the date of the October Disclosure.

Further, Dr. Brody and Sprint have failed to provide any element-by-element analysis of the asserted claims to support the assertion that the October Disclosure reflects a full conception of those claims. Indeed, the document on its face is not a complete conception of the claimed invention. Moreover, Dr. Brody never even references the claims in his discussion of the October Disclosure. Instead he simply states without elaboration that the "invention" is disclosed. Ex. B,

---

[7]    There are, for example, no lab notebooks, development documents, interview notes, or invention disclosure statements to show when the claimed invention was conceived; only the October Disclosure, and counsel's time records.

Brody Inv. Rep. at ¶¶ 67-69, 72.[8]  Rule 26 requires a full disclosure of the basis for and reasoning supporting an expert's opinion.  Fed. R. Civ. P., 26(a)(2)(B)(i) and (ii).  Merely stating the conclusion does not meet that standard.  *Davis v. Brouse McDowell*, 596 F.3d 1355, 1363-1364 (Fed Cir. 2010); *Xpertuniverse, Inc. v. Cisco Sys., Inc.*, No. 09-CV-00157 (D. Del. March 11, 2013).

Dr. Brody's reticence may be due to the fact that, as he has effectively admitted, the October Disclosure is not a complete conception of the claimed invention.  At his deposition, Dr. Brody testified that what the October Disclosure shows is Figure 2 of the '853 patent.  Ex. F, Brody Dep. at 120:14-23.  But the '853 patent has two figures, and disclosure of only one of the two is insufficient.  As Dr. Brody elaborated, the October Disclosure "rearranges" the topology of the claimed "network" of the patent's Figure 1 and therefore does not show "exactly where" the various claimed records "[a]re coming from" as is required by the claims:

    Q.    So your position is the figure one of the 853 patent is superfluous?
    A.    No, it wouldn't be superfluous.
    Q.    Is there any -- okay.  Then where is figure one disclosed in the materials that you
          looked at, October 1994 materials?
    A.    Where is figure one?
    Q.    You told me –
    A.    One of ordinary skill in the art would know that . . . *this [referring to a figure in the
          October Disclosure] is a rearrangement topologically of what is in figure one.  The
          three elements there are the key elements and you know exactly where they're
          coming from[,] from figure one.*
                                          * * *
    Q.    What you've told me is that [the October] drawing is substantially the same as
          figure two of the 853 patent, right?
    A.    That's correct.
    Q.    *And what figure one of the 853 patent adds to figure two is the topology of the
          network that the inventors had in mind; is that fair enough?*
    A.    *It's an embodiment of the topology.*

*Id.* at 121:13-122:17 (emphasis added).

Since there is no conception until the inventor has "formed in his or her mind a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice," *Mahurkar*, 79 F.3d at 1577, the absence of a disclosure of the topology of the claimed

---

[8]     At his deposition, Dr. Brody claimed to have performed such a limitation by limitation comparison, but could point only to paragraphs 67 and 68 of his Invalidity Report.  Ex. F, Brody Dep. at 118:15-120:13.  That portion of his report contains no such thing.

network is fatal to Sprint's date of invention argument. The absence of Figure 1 from the October Disclosure means that each and every limitation of the asserted claims is not disclosed; there is nothing in that disclosure which illustrates "a complete and operative" conception of the network in which the method claims were to be practiced and which was to comprise the system of the apparatus claims. Indeed, by Dr. Brody's own testimony, the October Disclosure not only omits Figure 1 of the patent, it shows something different from Figure 1: a "rearrangement topologically of" the network shown in that figure. Also with respect to the asserted claims, each of which requires that the invention's "primary" and "secondary records" come from specific sources (namely, the "primary" and "secondary" "network elements"), the admitted absence of a disclosure of "where they're coming from," is fatal.

Finally, as late as April 13, 1995 a draft claim set for the process patent application confirms that not all elements of the asserted claims had been conceived. The claim set as drafted does not mention the "primary network" element[9] and it does not require that service records be merged in a network element different from the ones that generated them.[10]   Ex. K, SPRIDEO_03_003827.

Without an expert opinion applying the evidence of the purported October 4, 1994 invention date to the elements of asserted claims, in light of Dr. Brody's admissions as to the differences between that October Disclosure and the '853 claims, and in light of the affirmative evidence showing that key claim elements had not been conceived well into the application process, Sprint cannot show a conception date for the claimed inventions earlier than the filing date of the patent.[11]   Two recent Federal Circuit cases illustrate the futility of Sprint's position.

---

[9]   It does reference "a first" network element but, it is well established that the phrase "a first" in a patent claim simply means one of several, not the first in a series, which is exactly what the claimed "primary network element" is.

[10]   The claim element was not added until prosecution when it was required to claim around the prior art. Ex. C, Bradner Dec. at Ex. B, ¶¶ 294-304.

[11]   See also, Ex. C, Bradner Dec. at Ex. C, ¶ 202 (Noting, in addition to the foregoing, that the October Disclosure does not encompass a disclosure of the claimed services provided by the claimed network elements in response to the claimed service requests, the primary and secondary network elements, the primary and secondary records, the single network record with the associated information, the details of the generation of the Call Reference ID, or deleting portions of records during the merge process.

14

*Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011) (finding proof of conception inadequate where "there was never any linking of that conception document and what the invention was in the" patent at issue); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1323 (Fed. Cir. 2013) (holding, inter alia, that patentee "failed to demonstrate how [the alleged conception document] satisfies all limitations recited in the" claims at issue).

## VI.    SPRINT CANNOT PROVE ANY DAMAGES FOR THE ALLEGED INFRINGEMENT OF THE '853 PATENT

### A.    The Applicable Law

The Supreme Court laid out the legal framework for admitting expert testimony in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).    There the Court emphasized that admissibility must be based "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.  The Court clarified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) that a district court's "gatekeeping obligation" applies to all expert testimony.  When considering expert testimony offered to support a reasonable royalty argument, the Federal Circuit applies the above principles in examining whether the methodology underlying the opinion is "sound"—a "critical prerequisite" to admitting the testimony.  *Virnetx, Inc. v. Cisco Sys., Inc.*, --- F.3d ---, 2014 WL 4548722 at *16 (Fed. Cir. Sept. 16, 2014).   An example of unsound methodology is when a purported expert fails to apportion value to the patented features, as opposed to the non-patented features, of an accused device and when he fails to "carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.* at *17.  In such cases, the testimony should be excluded. *Id.*

### B.    Statement of Facts with Respect to Damages

### REDACTED

15

**REDACTED**

C.    **Argument Regarding Damages**

**REDACTED**

REDACTED

**REDACTED**

**REDACTED**

## VII.   CONCLUSION

For the reasons set forth above, Comcast requests to Court to find as a matter of law that:

(1) Comcast's IMS network does not infringe the '853 patent with respect to calls

originated on that network;

(2) The invention date of the '853 patent is the filing date of the application that lead to the

'853 patent – June 22, 1995; and

(3) The damages opinions of Sprint's experts must be excluded, and Sprint must be found

to take $0.00 as damages for any infringement proven as to the '853 patent.

Redacted Public Version Filed: October 14, 2014
Dated: October 6, 2014                                    CONNOLLY GALLAGHER LLP

Of Counsel:                                               By: */s/ Ryan P. Newell*
                                                          Arthur G. Connolly III (#2667)
Matthew B. Lehr (#2370)                                   Ryan P. Newell (#4744)
Anthony Fenwick (*pro hac vice*)                          1000 West St., Suite 1400
David J. Lisson (*pro hac vice*)                          Wilmington, DE 19801
Anna M. Ison (*pro hac vice*)                             Tel: (302) 757-7300
Gareth E. DeWalt (*pro hac vice*)                         Fax:(302)757-7299
Micah G. Block (*pro hac vice*)                           aconnolly@connollygallagher.com
Shiwoong Kim (*pro hac vice*)                             rnewell@connollygallagher.com
Alyse L. Katz (*pro hac vice*)
Alex H. Hu (*pro hac vice*)                               *Attorneys for Comcast Cable*
Brooke A. Pyo (*pro hac vice*)                            *Communications, LLC and Comcast IP*
DAVIS POLK & WARD WELL LLP                                *Phone, LLC*
1600 El Camino Real
Menlo Park, CA 94025
Tel: (650) 752-2000

Pejman F. Sharifi (*pro hac vice*)
Krishnan Padmanabhan (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700

Michael L. Brody (*pro hac vice*)
Brian J. Nisbet (*pro hac vice*)
James Winn (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600

Jude Andre (*pro hac vice*)
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
Tel: (713) 651-2600