IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SPRINT COMMUNICATIONS COMPANY L.P.,

    Plaintiff,

v.

COMCAST IP HOLDINGS, LLC, et al.,

    Defendants.

Civil Action No. 12-1013-RGA

MEMORANDUM ORDER

Presently before the Court is Comcast's Motion to Exclude the damages opinions of Sprint's experts, Dr. Arthur Brody and Dr. Debra Aron. (D.I. 170). This Motion was included in Comcast's Motion for Summary Judgment filed on October 6, 2014, but is addressed separately here. (*Id.*). The matter has been fully briefed (D.I. 171, 196 & 220), and the parties appeared for oral argument on January 8, 2015 (D.I. 239). The parties appeared for a *Daubert* hearing on this specific issue on January 16, 2015. (D.I. 229). Dr. Brody testified at the hearing. **IT IS HEREBY ORDERED** that Comcast's Motion to Exclude is **GRANTED**.

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony, stating that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

1

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1]

Comcast argues that Dr. Brody's opinion should be excluded because it does not meet the requirements of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702, and that Dr. Aron's opinion should be excluded because it is based on the erroneous conclusions made by Dr. Brody in his report. (D.I. 171 at 21–24). During direct examination, Dr. Brody explained that he analyzed Comcast's Technical Requirements Document (TRD) for the IP Multimedia Subsystem (IMS), and provided two opinions: (1) a requirements opinion (¶ 228); and (2) a

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to the rule were not intended to make any substantive change.

components opinion (¶ 229). (D.I. 229 at 10:7–11:10). For his requirements opinion, Dr. Brody found that 258 (7%) of the approximately 3,685 "MUST" requirements "relate to" the functionality claimed by the '853 patent. (D.I. 172-15 at 6–7 ¶ 228). For his components opinion, Dr. Brody found that 7 (38.8%) of the 18 functional components in Comcast's IMS network were implicated by the '853 patent, and that 7 (16.7%) of the 42 enumerated functions of the implicated components were related to the '853 patent. (*Id.* at 8 ¶ 229). Thus, Dr. Brody concluded that 16.7% of the functionality of the 38.8% of the IMS system—6.5% of the system as a whole—"relate to" the '853 patent. (*Id.*). Based on these two data points, Dr. Brody concluded that from 6.5 to 7% of Comcast's IMS network infringed the asserted claims of the '853 patent. (D.I. 229 at 10:12–18 & 11:3–8).

Comcast argues that Dr. Brody's report does not meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)(i) because his report does not provide the "basis and reasons" for his opinions. (D.I. 171 at 21). Rule 26(a)(2)(B)(i) requires an expert witness to provide a report containing: "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26. Comcast argues that Dr. Brody's report does not disclose how he determined whether a requirement or component was "implicated by" the '853 patent. (D.I. 171 at 21 & 24). Sprint, on the other hand, argues that Dr. Brody's report explains that he analyzed Comcast's TRD, and based on his experience in the field, identified the functionalities that he believed to be related to the '853 patent. (D.I. 196 at 22–23). Dr. Brody concluded that 6.5 to 7% of Comcast's IMS network related to the patented subject matter, but provided no basis for how he determined which features "related to" the patent. This determination provides the entire basis for Dr. Brody's opinion, and thus requires at least some explanation. Without such, Dr. Brody's report does not meet the requirements set forth in Rule 26.

3

Additionally, Comcast argues that Dr. Brody's apportionment methodology was not reliable because he did not measure the value attributable to the '853 patent. (D.I. 171 at 23). The Federal Circuit has made clear that "a patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson*, 111 U.S. at 120). Further, the "patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance." *Id.* (quoting *Garretson*, 111 U.S. at 121). Comcast contends that Dr. Brody's analysis measures the portion of the IMS network that is made up by the entire billing functionality, rather than the incremental improvement added by the '853 patent. (D.I. 171 at 23). The '853 patent does not purport to cover billing functionality generally, but instead claims to increase "flexibility" in billing by eliminating the "cumbersome arrangement" between the interexchange carrier (IXC) and the vendor, and to create "substantial efficiencies" by eliminating the need to transmit billing information back to the originating switch. (D.I. 47-1 at 5, 1:53–2:61). Dr. Brody's report does not mention the improvements added to Comcast's IMS network by the '853 patent, and provides no explanation for how requirements and components were found to "relate to" the claimed subject matter. Therefore, Dr. Brody's analysis is not tied to the improvements attributable to the patented invention, and his opinion is unreliable for purposes of Rule 702.

Sprint attempts to salvage Dr. Aron's opinion by claiming that she "took additional steps" to determine a reasonable royalty, "including applying the *Georgia-Pacific* factors." (D.I. 196 at 24). According to the Federal Circuit, "a reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place." *VirnetX*, 767 F.3d at 1327 (alterations in original). Dr. Aron begins her analysis with the projected

4

savings that Comcast would generate by implementing the IMS network. (D.I. 172-21 at 3 ¶ 162). Dr. Aron, however, does not address what, if any, impact the '853 patent had on generating these savings. Dr. Aron makes clear that her understanding of the '853 patent as it relates to the IMS network is based solely on Dr. Brody's report (*Id.* ¶ 161 nn.282–84), and her entire analysis is based on the two data points provided by Dr. Brody. (*Id.* at 4–5 ¶¶ 165–67). I have seen no evidence that ties Comcast's savings to the claimed invention.[2]

I think an analogy may be helpful. Let's assume there is a company that uses a local area network computer system. It costs $1,000,000 per year to operate. The company decides to upgrade. It gets a new local area network computer system. The new network system has upgraded routers. The upgrades to the routers are protected by a patent. A technical expert concludes that the new network system performs 5000 different functions. The technical expert also concludes that the routers perform 250 different functions. (Or that the upgrades to the routers perform 250 different functions. The point will be the same.). After the new system is in use, the company calculates that it now only costs $800,000 per year to operate the local area network system. What is the contribution of the routers (or the upgrades to the routers) to that $200,000 per year that is being saved? There is insufficient information to make a reasonable estimate. Saying that the new routers (or the upgrades to the routers) are responsible for 250/5000 (or 5%) of the savings is not based on science. It is not a reasonable estimate. It is simply a guess.

Dr. Aron relies almost exclusively on Dr. Brody's report, which fails to provide any scientific methodology that can be relied upon for determining how the patented features add value to the IMS network. Therefore, Dr. Aron's analysis, even with the *Georgia-Pacific* factors,

---

[2] Dr. Aron stated in her report that she requested documents from Comcast providing "additional detail behind Comcast's incremental savings from its IMS-CDV implementation," but no such information has been provided.

5

does not tie proof of damages to the claimed invention's "footprint." It follows that Dr. Aron's methodology for determining a reasonable royalty is unreliable, and her opinion based on such methodology should be excluded.

For the reasons set forth above, **IT IS HEREBY ORDERED** that Comcast's Motion to Exclude the damages opinions of Dr. Brody and Dr. Aron is **GRANTED**.

Entered this 29th day of January, 2015.

Richard G. Andrews
United States District Judge