IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br><br> Plaintiff, <br><br> v. <br><br> COMCAST IP HOLDINGS, LLC, et al., <br><br> Defendants. | Civil Action No. 12-1013-RGA |

MEMORANDUM ORDER

Before the Court is Sprint's Motion *in Limine* 3. (D.I. 235-1 at 237). Sprint moves to preclude Comcast from offering into evidence, referencing, or eliciting testimony about settlement and license agreements entered into by Comcast relating to comparable technology. (*Id.*). **IT IS HEREBY ORDERED** that Sprint's Motion *in Limine* 3 is **GRANTED**.

This motion implicates the second *Georgia-Pacific* factor, which looks at "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). "This factor examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). "[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). A patentee cannot rely on license agreements that are "radically different from the hypothetical agreement under consideration." *Id.* at 1316. "[C]omparisons of past patent licenses to the infringement must account for the 'technological and economic differences' between them." *Wordtech Sys., Inc. v. Integrated*

1

*Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

Comcast's damages expert, Ms. Julie Davis, relies on four Comcast license agreements to support her reasonable royalty analysis: (1) September 2010 covenant not to sue and settlement agreement with Rates Technology Inc. (RTI); (2) August 2012 license agreement with Jefferson Valley, LLC; (3) August 2013 settlement agreement with TR Labs; and (4) October 2014 settlement and license agreement with GlobeTec Trust LLC. (D.I. 236-3 at 129–35).[1] Sprint argues that there are substantial economic and technological differences between the four licenses at issue and the hypothetical negotiations. (D.I. 235-1 at 238). Sprint points out that none of the licenses include the patents in suit, three of the four licenses are with non-practicing entities, and all four licenses grant rights to additional patents and include international rights. Additionally, three of the four licenses occurred a number of years after the hypothetical negotiation dates.[2] Finally, three of the four licenses resulted from the settlement of litigation, and thus do not represent the behavior of two willing licensors, as would be the case in the hypothetical negotiations between Comcast and Sprint.

Comcast's agreement with RTI took place in September 2010, which is around the time of the hypothetical negotiation for the '853 patent. (D.I. 236-3 at 129). Thus, the RTI agreement has a comparable time frame. In addition, Comcast's technical expert, Mr. Scott Bradner, concluded that two of the licensed patents were comparable to the '853 patent because they were

---

[1] My memory is that Comcast conceded the motion as to the GlobeTec Trust agreement at the pretrial conference on January 23, 2015, but the transcript of the conference is not on the docket yet.

[2] Ms. Davis found that the dates for the hypothetical negotiations would be as follows: (1) '605 and '339 patents: 2000; (2) '832 patent: 2005; and (3) '853 patent: October 2010. (D.I. 236-3 at 124).

2

related to telephone billing. (*Id.* at 130). The agreement, however, was the result of a settlement between Comcast and a non-practicing entity, meaning that there were likely major economic differences between the negotiating parties. Sprint points out that Ms. Davis addresses the economic differences not at all. (D.I. 235-1 at 238). In response, Comcast points to Ms. Davis's report and deposition as evidence that she did. (*Id.* at 240). Review of the cited materials (D.I. 237-6 at 37–40; D.I. 237-6 at 20–24, 108:10–114:16) does not support Comcast's response.[3] Therefore, the RTI license agreement is not shown to be "sufficiently comparable" to the hypothetical negotiation.

Comcast's agreement with Jefferson Valley took place in August 2012—seven (7) years after the hypothetical negotiation for the '832 patent. (D.I. 236-3 at 130). The license agreement included nine (9) U.S. patents along with foreign patents and patent applications, which is quite different from the one patent that would be at issue in the hypothetical negotiation. Mr. Bradner concluded that one of the patents was comparable to the '832 patent because it provided similar "telephony related functionality" and "operational benefits." (*Id.* at 131). Mr. Bradner's vague allegations of comparability, however, are not sufficient, especially where the agreement occurred seven years after the hypothetical negotiation date. Thus, the Jefferson Valley licensing agreement is "radically different" from the hypothetical agreement that would have resulted from negotiation between Comcast and Sprint.

The agreement between Comcast and TR Labs took place in August 2013—thirteen (13) years after the hypothetical negotiation for the '605 and '339 patents. (*Id.* at 132). This is a considerable temporal difference, and would have a dramatic effect on the economic positions of

---

[3] Ms. Davis had no "specific knowledge about what [RTI] is," and assumed it was a non-practicing entity. (D.I. 237-6 at 21, 109:4–20). She made no "adjustments" notwithstanding that "Sprint and RTI are not similar organizations." (*Id.* at 22, 11:23–24). Using settlement with a non-practicing entity, involving different patents, without a fuller analysis, does not provide a methodologically sound basis for comparison.

3

the negotiating parties. The TR Labs agreement was the result of a litigation settlement, and was for a "fully paid-up, royalty free" license. (*Id.*). The GlobeTec license agreement took place in October 2014—fourteen (14) years after the hypothetical negotiation for the '605 and '339 patents. (*Id.* at 133). The GlobeTec license was also the result of settlement. Both license agreements occurred over a decade after the hypothetical negotiation date, and were entered into with non-practicing entities for purposes of settlement. There is no "basis in fact" to use these license agreements as comparisons for the hypothetical negotiation between Comcast and Sprint.

While Ms. Davis's report provides examples of how the four license agreements differ from the hypothetical agreements, she does not explain how her methodology accounts for these differences. (*Id.* at 134–35). First, all of the agreements license a number of patents, all of which are not in suit. Comcast, on the other hand, would only be licensing two patents, at most, in a single hypothetical negotiation. Second, and most importantly, three out of the four licenses resulted from litigation settlements with non-practicing entities, who most likely were in drastically different bargaining positions than Sprint would have been in at the time of hypothetical negotiation. Ms. Davis provides no information regarding the nature of the litigation or the context of the settlements, and thus there is no reason to believe that the settlements in question are comparable.[4] Therefore, the four licenses are not sufficiently comparable to the hypothetical licenses, and, to the extent the lack of comparability could be accounted for, Ms. Davis has not attempted to do so. Thus, all four agreements should be excluded.

---

[4] The Court has some knowledge of the GlobeTec litigation, as it was assigned to me. GlobeTec initiated twenty-eight (28) lawsuits in this District, all of which were settled (most quite quickly) with little litigation. None of them reached a *Markman* hearing.

4

For the reasons set forth above, **IT IS HEREBY ORDERED** that Sprint's Motion *in Limine* 3 is **GRANTED**.

Entered this 30th day of January, 2015.

/s/ Richard G. Andrews
United States District Judge